**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**ALISON GROSKI et al.,**

                  **Plaintiffs,**            **1:12-cv-1300**
                                             **(GLS/TWD)**

        **v.**

**THE CITY OF ALBANY et al.,**

                  **Defendants.**

_____

**APPEARANCES:**             **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Treyvus, Konoski Law Firm      BRYAN M. KONOSKI, ESQ.
305 Broadway, 14th Floor
New York, NY 10007

**FOR THE DEFENDANTS:**
City of Albany Corporation Counsel    JOHN JOSEPH REILLY, ESQ.
City Hall, 24 Eagle Street
Albany, NY 12207

Rehfuss, Liguori Law Firm        STEPHEN J. REHFUSS, ESQ.
40 British American Blvd.
Latham, NY 12110

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiffs Alison Groski and Brian Groski commenced this action

against defendants the City of Albany, police officer K. Meehan, police officer W. Pierce, Sgt. E. Donohue, and police officer Brandon M. Bailey,[1] in their official and individual capacities, pursuant to 42 U.S.C. § 1983, alleging violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, for false imprisonment,[2] malicious prosecution, excessive force, First Amendment retaliation, and abuse of process.  (Am. Compl., Dkt. No. 20.)  Pending before the court is defendants' motion for summary judgment.  (Dkt. No. 50.)  For the reasons that follow, defendants' motion is granted in part and denied in part.

## II.  **Background**[3]

On March 12, 2011, plaintiffs were in the City of Albany for St.

_____

[1] The court notes that plaintiffs initially named five John Doe defendants in their complaint, (Compl., Dkt. No. 1), but their amended complaint has eliminated the John Does, (Am. Compl., Dkt. No. 20).  The Clerk is therefore directed to terminate the John Doe defendants as parties to this action.  Additionally, given Bailey's waiver regarding potential conflict with joint representation, (Dkt. No. 38), the Clerk is directed to add the City of Albany Corporation Counsel to the docket as a representative of Bailey in this action.

[2] The parties frequently refer to plaintiffs' cause of action as "false arrest."  The correct nomenclature is "false imprisonment" because plaintiffs were arrested without a warrant and, therefore, without process. *See Wallace v. Kato*, 549 U.S. 384, 388-89 (2007).

[3] Unless otherwise noted, the facts are not in dispute.

2

Patrick's Day celebrations, and over the course of the day, they frequented several bars on North Pearl Street in downtown Albany. (Defs.' Statement of Material Facts (SMF) ¶¶ 1, 4, 8, Dkt. No. 50, Attach. 1.) Albany police had observed significant alcohol use and a number of fights among groups of people throughout the day. (*Id.* ¶ 9.) Plaintiffs claim that they each consumed three or four alcoholic drinks that day. (*Id.* ¶ 11.)

In the early morning hours of March 13, plaintiffs decided to dine at Pizza 54, a restaurant located on North Pearl Street. (*Id.* ¶ 15.) Plaintiffs allege that, while inside Pizza 54, three men at an adjacent table threw various items, including pizza crust, at Alison. (*Id.* ¶¶ 17-18.) When this occurred, Brian had a verbal encounter with the three men at the other table. (*Id.* ¶ 19.) The men responded by saying, "let's take this outside," and shortly afterward, Brian and Alison got up to leave, allegedly to avoid any further confrontations. (*Id.* ¶ 20; Pls.' SMF ¶ 17, Dkt. No. 52, Attach. 28.) As plaintiffs exited the restaurant, they were followed behind by the three men. (Defs.' SMF ¶ 20; Pls.' SMF ¶ 17.)

After the time that plaintiffs left the restaurant, the facts are largely disputed. Plaintiffs allege that upon leaving the restaurant, they were confronted by the three men, and that Brian did not initiate any physical

3

contact with anyone else at the scene.  (Pls.' SMF ¶¶ 20-21.)  Rather,

within an "instant" of one of the three men grabbing Brian, police were on

the scene; Brian alleges that shortly after exiting the restaurant, a police

officer grabbed him by the neck, choked him, threw him against a car, and

struck him in the ribs with a closed fist.  (*Id.* ¶¶ 22-23.)  Upon witnessing

this, Alison asserts that she was attempting to explain to defendants that

her husband had not done anything wrong, and that she only raised her

voice so that they could better hear her explanation.  (*Id.* ¶ 24.)  According

to plaintiffs, as Alison began walking away, an officer pushed her in the

back, and Sergeant Donohue then detained her, pushed her to a nearby

parked car, grabbed her arm, and threw her to the ground.  (*Id.* ¶¶ 25-26.)

As a result, she claimed to suffer pain in her face and arm, as well as

bruising.  (*Id.* ¶ 29.)

Defendants' version of events, meanwhile, is that Officers Pierce,

Bailey, and Meehan observed a fight occurring on the sidewalk outside of

Pizza 54, and responded to the scene; at that time, they noted that Brian

was involved in the fight, shoving other people, and shouting obscenities.

(Defs.' SMF ¶¶ 22-24, 26.)  Defendants ordered the group to disperse and

leave the scene, but Brian repeatedly refused to comply with the officers'

4

orders.  (*Id.* ¶¶ 27-28.)  Specifically, Officer Pierce noted that Brian appeared intoxicated, and would not calm down, so he brought Brian over to a nearby parked car.  (*Id.* ¶ 28.)  At this time, defendants testify that Alison, who was also yelling and refusing to comply with police orders, grabbed Officer Pierce's shoulders and jumped on his back.  (*Id.* ¶¶ 29-30, 32-33, 35-36.)  Plaintiffs, on the other hand, both testified that Alison did not jump onto Officer Pierce's back.  (Pls.' SMF ¶ 36.)  Sergeant Donohue ultimately decided to arrest Alison at this time, and attempted to bring her over to a nearby parked car.  (Defs.' SMF ¶¶ 37-38.)  However, defendants assert that Alison refused to put her hands behind her back, and ignored repeated orders to stop resisting.  (*Id.* ¶ 38.)  Sergeant Donohue then forcibly put Alison's hands behind her back, and at some point during this incident, Alison tripped over the curb and fell toward the ground, but defendants claim she did not actually hit the ground because Officer Bailey caught her fall.  (*Id.* ¶¶ 39-40.)

As a result of this incident, plaintiffs were each charged, by criminal information, with disorderly conduct pursuant to N.Y. Penal Law § 240.20, and Alison was additionally charged with resisting arrest pursuant to N.Y. Penal Law § 205.30.  (Defs.' SMF ¶ 43; Dkt. No. 52, Attach. 8; Dkt. No. 52,

Attach. 9; Dkt. No. 52, Attach. 10.)  In Albany City Court, plaintiffs made motions to dismiss the criminal informations which charged them with disorderly conduct and resisting arrest on the grounds that they were facially insufficient.  (Dkt. No. 50, Attach. 13 at 2, 8.)  Judge Rachel Kretser of Albany City Court granted Alison's motion to dismiss the resisting arrest charge for facial insufficiency, (*id.* at 4), but denied plaintiffs' motions to dismiss the disorderly conduct charges, finding that the elements of the offense were "sufficiently pleaded in the [i]nformation[s]," (*id.* at 4-5, 9-10).  Ultimately, at a bench trial, plaintiffs were acquitted of the disorderly conduct charges, with Judge Kretser stating that plaintiffs' guilt was not established beyond a reasonable doubt.  (Dkt. No. 52, Attach. 7 at 112-13.)

### III.  Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV.  Discussion

At the outset, the court notes that plaintiffs have consented to the

dismissal of their claims for abuse of process, (Am. Compl. ¶¶ 92-96), and conspiracy to violate civil rights, (*id.* ¶¶ 97-98).  (Dkt. No. 52 at 20.) Accordingly, these claims are dismissed, and plaintiffs' remaining claims consist of claims of false imprisonment, malicious prosecution, and excessive force against the individually named defendants, a *Monell* claim against the City of Albany, and Alison's First Amendment claims against Donohue.  The court will address each of these in turn.[4]

## A.    <u>False Imprisonment and Malicious Prosecution</u>

In general, the torts of false arrest and false imprisonment under 42 U.S.C. § 1983 and New York State law are "substantially the same" except for "the requirement that the constitutional tort be under color of state law." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) (internal quotation marks

---

[4] The court also notes that, in their reply brief, defendants have argued that a video of the events at issue, submitted as an exhibit to plaintiffs' response to the summary judgment motion, should not be considered by the court as it has not been properly authenticated.  (Dkt. No. 55 at 1-2.)  Pursuant to Federal Rule of Evidence 901, in order to authenticate evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  This requirement may be satisfied by, among other things, testimony of a witness with knowledge.  Fed. R. Evid. 901(b).  Plaintiffs satisfied that requirement here with an affidavit from Alison, swearing that "the video contains a fair and accurate depiction of what transpired" during the incident in question.  (Dkt. No. 52, Attach. 24 ¶ 3.)  The probative value of the video offered will ultimately be an issue for the jury.

and citation omitted); *see Jacques v. Sears, Roebuck & Co.*, 30 N.Y.2d 466, 473 (1972).  A claim for false arrest or imprisonment brought pursuant to § 1983 "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted).  To establish a false arrest claim under either federal or New York law, a plaintiff must demonstrate that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged."  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks and citations omitted).

"An arrest is justified, or otherwise privileged, if there was probable cause to arrest."  *Sulkowska v. City of N.Y.*, 129 F. Supp. 2d 274, 287 (S.D.N.Y. 2001) (citation omitted).  In other words, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest."  *Weyant*, 101 F.3d at 852 (internal quotation marks and citation omitted).  "Thus, a claim for false arrest must fail if probable cause to arrest existed."  *Martinetti v. Town of New Hartford Police Dep't*, 112 F. Supp. 2d 251, 252 (N.D.N.Y. 2000) (citation omitted).

"Probable cause exists when an officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003) (internal quotation marks and citation omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citation omitted). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." *Weyant*, 101 F.3d at 852 (citations omitted).

Like false arrest and imprisonment, the elements of malicious prosecution under § 1983 and New York law are the same. *See Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994). To prevail on a malicious prosecution claim, a plaintiff must establish that: "(1) the defendant commenced a criminal proceeding against him; (2) the proceeding ended in the plaintiff's favor; (3) the defendant did not have probable cause to believe the plaintiff was guilty of the crime charged; and (4) the defendant

acted with actual malice." *Id.* (citation omitted); *see Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004).

As with false arrest, the existence of probable cause is a complete defense to a malicious prosecution claim. *See Savino*, 331 F.3d at 72; *see also Lewis v. United States*, 388 F. Supp. 2d 190, 195 (S.D.N.Y. 2005). Probable cause to commence a criminal proceeding exists when a defendant has "knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (internal quotation marks and citations omitted).

As the court explained in *McClellan v. Smith*, No. 1:02-CV-1141, 2009 WL 3587431, at *6 (N.D.N.Y. Oct. 26, 2009), "[i]t is erroneous to conflate probable cause to arrest with probable cause to prosecute." "False imprisonment asks whether the facts known to the police officer at the time of confinement objectively establish probable cause." *Id.* On the other hand, "[m]alicious prosecution asks whether the facts objectively support a reasonable belief that a criminal prosecution should be initiated or continued because that prosecution could succeed." *Id.*

Here, defendants argue that they are entitled to summary judgment on plaintiffs' false imprisonment and malicious prosecution claims, because, in denying plaintiffs' motions to dismiss the criminal informations charging them with disorderly conduct, Judge Kretser found that the informations were facially sufficient, and therefore this determination created a presumption that probable cause existed.  (Dkt. No. 50, Attach. 2 at 12-17); *see DiMascio v. City of Albany*, No. 93-CV-0452, 1999 WL 244648, at *3 (N.D.N.Y. Apr. 21, 1999).  As defendants point out, "a pretrial determination of probable cause creates a presumption of probable cause" that must be overcome by the plaintiff.  *DiMascio*, 1999 WL 244648, at *3. However, this presumption "'applies only in causes of action for malicious prosecution,'" and not in actions for false arrest or imprisonment.  *Savino*, 331 F.3d at 75 (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)). Further, this presumption may be rebutted "by evidence establishing that the police witnesses have not made a complete and full statement of facts[,] that they have misrepresented or falsified evidence[,] or otherwise acted in bad faith."  *Boyd v. City of N.Y.*, 336 F.3d 72, 76 (2d Cir. 2003) (internal quotation marks and citation omitted).

With regard to whether a presumption of probable cause applies to

plaintiffs' malicious prosecution claims, given the standard under which Judge Kretser reviewed the criminal informations for facial sufficiency, her denial of the motions to dismiss and finding that the informations were facially sufficient, appears to be a determination that probable cause existed. *See* N.Y. Crim. Proc. Law § 100.40(1) ("An information . . . is sufficient on its face when . . . [t]he allegations . . . provide reasonable cause to believe that the defendant committed the offense charged"). However, even if a presumption of probable cause applied, the subsequent acquittal of plaintiffs on the disorderly conduct charges indicates that the facts ultimately adduced at trial did not sufficiently support a conviction on the charges brought against plaintiffs. Therefore, as to plaintiffs' claims, given the disputes between the parties as to the nature of the events leading to plaintiffs' arrest and prosecution, there are genuine issues of fact with respect to probable cause. In other words, the court cannot determine as a matter of law, based on this record, whether there was in fact probable cause, and therefore defendants' motion for summary judgment on this basis is denied.

**B.** **Excessive Force**

Defendants argue that Alison's excessive force claim should be

dismissed because she was lawfully arrested with probable cause and her injuries were only minor in nature.[5]  (Dkt. No. 50, Attach. 2 at 17-18.) Plaintiffs counter that the record evidence demonstrates that summary judgment on this claim is inappropriate.  (Dkt. No. 52 at 16-18.)  The court agrees with plaintiffs.

"In order to establish that the use of force to effect an arrest was unreasonable and therefore a violation of the Fourth Amendment, [a] plaintiff [ ] must establish that the government interests at stake were outweighed by the nature and quality of the intrusion on [the plaintiff's] Fourth Amendment interests."  *Barlow v. Male Geneva Police Officer Who Arrested Me on Jan. 2005*, 434 F. App'x 22, 26 (2d Cir. 2011) (internal quotation marks and citation omitted).  "'In other words, the factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time.'"  *Id.* (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

_____

[5] The court notes that, although both plaintiffs have brought excessive force claims, (Am. Compl. ¶¶ 18-20, 75-78), defendants have only addressed Alison's claim in their motion papers, and have not argued that Brian's excessive force claim should be dismissed, (Dkt. No. 50, Attach. 2 at 17-18; Dkt. No. 55 at 6-7).

"[C]laims of excessive force arising in the context of an arrest under the Fourth Amendment's objective reasonableness test," are analyzed "paying 'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Phelan v. Sullivan*, 541 F. App'x 21, 24 (2d Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The entirety of the record must be evaluated "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham*, 490 U.S. at 396)); *accord Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). Indeed, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" *Tracy*, 623 F.3d at 96 (quoting *Graham*, 490 U.S. at 397).

"[T]he Second Circuit and district courts in the Circuit recognize the concept of *de minimis* injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed." *Jackson v. City of N.Y.*, 939 F. Supp. 2d 219, 231 (E.D.N.Y.

2013) (internal quotation marks and citation omitted). "'[S]hort-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches from a cut inside the mouth'" have been held to be *de minimis*, and, thus unactionable. *Id.* (quoting *Lemmo v. McKoy*, No. 08-CV4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011)).

The parties have provided conflicting accounts as to whether defendants initiated the use of force, how much force was used by each, whether any force used was necessary, and the extent of plaintiffs' injuries. For example, Alison testified that as she was complying with police instructions and walking away from the scene, she was pushed in the back, (Dkt. No. 50, Attach. 7 at 84-85), grabbed by the arm and tossed to the ground, (*id.* at 87), and then had her head forcibly held against the hood of a car, (*id.* at 89-90). She claimed that as a result of the use of force, she suffered bruising on her arm, leg, and face which required her to miss several days of work. (*Id.* at 36, 40.) Brian also testified that the responding officers grabbed him by the neck, threw him against a car, and hit him in the ribs with a closed fist. (Dkt. No. 50, Attach. 8 at 49-50.)

Defendants, on the other hand, testified that plaintiffs were refusing to

comply with police orders, (Dkt. No. 50, Attach. 9 at 32), were being resistant and combative, (Dkt. No. 50, Attach. 10 at 32-34; Dkt. No. 50, Attach. 11 at 18-20), and that only minimal force was used in order to control plaintiffs and place them under arrest, (Dkt. No. 50, Attach. 11 at 24-25).

Resolution of these conflicting versions of the relevant events is a matter for the jury and is not properly decided by a court on summary judgment. Therefore, defendants' motion for summary judgment on the excessive force claims is denied.

## C.     **First Amendment**

Defendants next argue that Alison's First Amendment claims against Donohue should be dismissed because she cannot demonstrate that any adverse action was taken because of her exercising her First Amendment rights, and that she has not established that her First Amendment rights were chilled by Donohue's conduct. (Dkt. No. 50, Attach. 2 at 18-20.)

To maintain a claim for First Amendment retaliation, a plaintiff must prove: "(1) [s]he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [her] exercise of that right; and (3) defendants' actions effectively chilled the

16

exercise of [her] First Amendment right." *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010) (internal quotation marks and citation omitted). Plaintiffs who allege a violation of their right to free speech must prove that official conduct actually deprived them of that right. *See Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002). To prove this deprivation, a plaintiff must come forward with evidence showing either that (1) defendants silenced her or (2) "defendant[s'] actions had some actual, non-speculative chilling effect" on her speech. *Id.*; *see Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992). "Where a party can show no change in [her] behavior, [s]he has quite plainly shown no chilling of [her] First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

Here, even assuming that Alison's speech was protected First Amendment activity and that Donohue acted against her because of that activity, she has not produced any evidence showing that Donohue's actions chilled her speech or otherwise prevented her from speaking. Her testimony does not establish that she stopped advocating for her husband because of her arrest. Donohue's testimony indicates that Alison continued yelling and screaming even after he asked her to put her hands behind her back and began to place her under arrest. (Dkt. No. 50, Attach.

11 at 22.)  In fact, Alison's own testimony indicates that she continued having conversations with defendants after her arrest at the police station. (Dkt. No. 50, Attach. 7 at 92-96.)  Her conclusory and unsupported assertions in response to defendants' motion, that her speech was chilled, are insufficient to support her First Amendment claim, and it is therefore dismissed.

## D.   Qualified Immunity

Defendants further argue that the individual defendants are entitled to qualified immunity.  (Dkt. No. 50, Attach. 2 at 25-27.)  Plaintiffs argue that the outstanding questions of fact render qualified immunity inappropriate in this case.  (Dkt. No. 52 at 23-25.)  The court agrees with plaintiffs.

"A government official is entitled to qualified immunity for his actions unless his conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known."  *Rivers v. Fischer*, 390 F. App'x 22, 23 (2d Cir. 2010).  "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.'" *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (quoting *Young v.*

*Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)).

In the present case, the legal principles governing defendants' conduct, discussed above, were well established.  However, the matter of whether it was reasonable for the officers to believe their actions met the standards set by those principles depends on whether one believes their version of the facts.  That version is sharply disputed, and the matter of the officers' qualified immunity therefore cannot be resolved as a matter of law. *See Weyant*, 101 F.3d at 857-58.

## E.   <u>Municipal Liability</u>

With respect to plaintiffs' claim against the City of Albany alleging municipal liability for constitutional violations, defendants argue that dismissal is warranted because plaintiffs have not put forth sufficient evidence to establish a custom, policy, or practice by the city which caused the alleged violations.  (Dkt. No. 50, Attach. 2 at 23-25.)  The court agrees.

A municipality may be liable for the constitutional violations of its employees provided that any such violations occurred pursuant to an official policy or custom.  *See Mayo v. Cnty. of Albany*, No. 07-cv-823, 2009 WL 935804, at *2 (N.D.N.Y. Apr. 3, 2009); *see also Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978).  A successful claim of

municipal liability under section 1983, therefore, requires the plaintiff "'to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Zherka v. City of N.Y.*, 459 F. App'x 10, 12 (2d Cir. 2012) (quoting *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007)). Although this rule "does not mean that the plaintiff must show that the municipality had an explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (citations omitted).

Here, in response to defendants' argument that plaintiffs have not and cannot establish a municipal custom, usage, or policy of the City of Albany, (Dkt. No. 50, Attach. 2 at 23-25), plaintiffs have simply pointed to two isolated incidents involving Officers Pierce and Meehan in arguing that the City has failed to address prior instances of constitutional violations, such that a municipal policy was established, (Dkt. No. 52 at 20-23). However, the evidence with respect to Meehan consists solely of allegations from a prior civil rights lawsuit in which Meehan was named as a defendant, which did not result in any finding of liability as against him.

*See Moore v. Meehan*, No. 1:08-CV-0357, 2010 WL 841007 (N.D.N.Y. Mar. 11, 2010). Therefore, the remaining incident of prior alleged misconduct by Pierce is insufficient, by itself, to establish a municipal policy or a repeated failure to address alleged violations. *See Ricciuti*, 941 F.2d at 123; *DeCarlo v. Fry*, 141 F.3d 56, 61-62 (2d Cir. 1998). Accordingly, defendants' motion is granted with respect to the City of Albany, and plaintiffs' claims against the City of Albany are dismissed.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Clerk terminate the John Doe defendants as parties to this action and add the City of Albany Corporation Counsel to the docket as a representative of Bailey; and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 50) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**ORDERED** that plaintiffs' claims for malicious abuse of process and conspiracy to violate civil rights (Am. Compl. ¶¶ 92-96, 97-98) are **DISMISSED**; and it is further

**ORDERED** that Alison Groski's First Amendment claims (Am. Compl. ¶¶ 79-91) are **DISMISSED**; and it is further

**ORDERED** that plaintiffs' claims against the City of Albany are

**DISMISSED** and the City of Albany is terminated as a defendant in this

case; and it is further

**ORDERED** that defendants' motion for summary judgment is

otherwise **DENIED**; and it is further

**ORDERED** that the case is trial ready and the Clerk shall issue a trial

scheduling order in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

June 5, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court